An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1118

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

v.                                   Union County
                                     No. 10CRS050358
KEVIN MICHAEL KING


Appeal by defendant from judgment entered 17 April 2013 by Judge W. David Lee in Union County Superior Court.  Heard in the Court of Appeals 19 February 2014.


    *Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

    *Appellate Defender Staples Hughes, by Assistant Appellate Defender David W. Andrews, for defendant-appellant.*


    HUNTER, Robert C., Judge.


Kevin Michael King ("defendant") appeals from judgment sentencing him to 236 to 293 months imprisonment on two counts of first-degree sex offense with a child and two counts of taking indecent liberties with a minor.  On appeal, defendant argues that: (1) the trial court committed plain error by admitting video footage of a forensic interview with the alleged

victim; (2) the trial court committed plain error by admitting testimony from the alleged victim's therapist that constituted an improper opinion on the alleged victim's credibility; (3) the trial court erred by denying his motion to dismiss the charges of taking indecent liberties with a minor; and (4) the trial court committed plain error by instructing the jury that it could convict defendant of taking indecent liberties with a minor based on theories not supported by the evidence.

After careful review, we find no error in the sex offense judgments, but we vacate the convictions for taking indecent liberties with a minor. Accordingly, we remand for resentencing.

**Background**

The evidence presented at trial tended to establish the following facts: "Jessica"[1], the alleged victim, was seven years old at the time of the incident underlying this case and ten years old at the time of trial. Defendant is Jessica's biological father. Defendant and Jessica's mother, "Jane Reynolds" ("Jane"), lived briefly with Jane's mother, "Anne Reynolds" ("Ms. Reynolds"), until the relationship between

---

[1] "Jessica" is a pseudonym used to protect the identity and privacy of the juvenile. Pseudonyms will also be used to refer to members of Jessica's family.

defendant and Jane ended when Jessica was two months old. Ms. Reynolds eventually became Jessica's legal guardian.

In January 2010, defendant's mother ("Lindsay") arranged with Ms. Reynolds for Jessica to visit with Lindsay and defendant at Lindsay's home in Monroe, N.C. Originally, Jessica was to spend one night with defendant and his mother, but Jessica later called and asked Ms. Reynolds if she could spend another night with them. Ms. Reynolds testified at trial that a few days after her visit with defendant, Jessica told Ms. Reynolds that she and defendant had a secret.

Jessica was in grief counseling during this time because her sister had died from leukemia in 2008. Before a regularly scheduled appointment with Kristen McClure ("Ms. McClure"), Jessica's therapist, Ms. Reynolds called and left a message with Ms. McClure to alert her that Jessica had a secret that she may want to talk about in the upcoming counseling session.

Ms. McClure testified that her conversation with Jessica in the counseling session was focused on secrets. Jessica disclosed to Ms. McClure that defendant made her watch with him what she described as "movies with naked people" on the computer. Ms. McClure did not ask for more details, because she thought it was apparent that there would be a Child Protective

Services report, and she did not want to disrupt that investigation. At the end of the counseling session, Ms. McClure told Ms. Reynolds that Jessica said "she had definitely been sexually abused." The day after the counseling session, Ms. Reynolds called Child Protective Services.

On 20 January 2010, Jessica spoke with licensed social worker, Rebecca Horner ("Ms. Horner"), who conducted a forensic interview. During the interview, Jessica gave Ms. Horner detailed descriptions of sexual acts that defendant allegedly made her perform. Ms. Horner's report stated that Jessica's account of abuse was clear and detailed and that she validated the alleged abuse through the use of anatomical dolls.

After the forensic interview, detectives arrested defendant and seized a computer from his mother's house. A grand jury indicted defendant for two counts each of: (1) statutory rape, (2) statutory sex offense, (3) incest, (4) taking indecent liberties with a minor, and (5) displaying harmful material to a minor. The matter was tried before a jury on 15 April 2013.

At trial, Jessica testified that during the visit with defendant at his mother's house, she watched a pornographic video on a computer with defendant while sitting on his lap. Jessica further testified that: (1) she rubbed defendant's penis

and put her mouth on his penis; (2) he put his mouth on her vagina; and (3) defendant kissed her "butt." Jessica said that defendant told her if she told anyone about what happened, he would not be able to see her for a long time.

After Jessica testified, the trial court allowed the State to show video footage of the forensic interview conducted by Ms. Horner with no objection or request for limiting instruction. The video showed Jessica telling Ms. Horner that defendant showed her multiple pornographic videos, put his mouth on her "butt and private," and made her perform oral sex on him. In the video Jessica also said that defendant penetrated her vagina with his penis at least two times and rubbed on her vagina with his testicles and one of his fingers.

Defendant testified at trial and denied the allegations. The other individuals staying at Lindsay's home that weekend also testified that they did not see anything unusual about defendant's conduct toward Jessica, though they admittedly were not present at all times.

At the conclusion of the State's evidence, defense counsel made a motion to dismiss all charges. As part of the motion, counsel asserted that the taking indecent liberties with a minor indictments were void for vagueness. The trial court dismissed

the charges of statutory rape, incest, and displaying harmful material to a minor.

At the charge conference, the trial court stated that the verdict sheet for taking indecent liberties with a minor would be based on (1) analingus, and (2) "rubbing the alleged victim's vagina." At the conclusion of the defense's evidence and during the charge conference, defense counsel reinstated his motion to dismiss. The trial judge denied the motion.

The jury convicted defendant of two counts of statutory sex offense and two counts of taking indecent liberties with a minor. On the verdict sheet for the two charges of taking indecent liberties with a minor, the jury checked the line for "Guilty of Indecent Liberties with Child (analingus)" and "Guilty of Indecent Liberties with Child (rubbing alleged victim's vagina)." The trial court consolidated the charges for judgment and sentenced defendant to 236 to 293 months imprisonment. Defendant gave notice of appeal in open court immediately following sentencing.

**Discussion**

**I.  Forensic Video**

Defendant first argues that the trial court erred by admitting the video of the forensic interview with Jessica

because her statements were inflammatory, far exceeded her testimony at trial, and prejudiced the jury against defendant. We disagree.

At trial, defendant did not object to the admission of the video. Thus, the appropriate standard of review is plain error. *State v. Black,* 308 N.C. 736, 740, 303 S.E.2d 804, 806 (1983). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and quotation marks omitted).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice - that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrenc*e, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal quotation marks omitted).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen.

Stat. § 8C-1, Rule 801(c) (2013). Generally, hearsay is not admissible unless it is offered for a purpose other than proving the truth of the matter asserted. *State v. Irick*, 291 N.C. 480, 498, 231 S.E.2d 833, 844 (1977). However, prior consistent statements of a witness are admissible for corroborative purposes. *State v. Martin*, 309 N.C. 465, 476, 308 S.E.2d 277, 284 (1983). Corroborative testimony may contain "new or additional information when it tends to strengthen and add credibility to the testimony which it corroborates." *State v. Ligon*, 332 N.C. 224, 237, 420 S.E.2d 136, 143 (1992) (citations omitted); *see also State v. Beane*, 146 N.C. App. 220, 232, 552 S.E.2d 193, 200 (2001) (corroborative evidence need not mirror the testimony it seeks to corroborate, as long as the new information tends to strengthen or add credibility to the testimony). However, "prior statements as to facts not referred to in [the witness's] trial testimony *and not tending to add weight or credibility to it* are not admissible as corroborative evidence." *State v. Frogg*e, 345 N.C. 614, 618, 481 S.E.2d 278, 280 (1997) (alteration in original).

A trial court has "wide latitude in deciding when a prior consistent statement can be admitted for corroborative, nonhearsay purposes." *State v. Call,* 349 N.C. 382, 410, 508

S.E.2d 496, 513 (1998). The North Carolina Supreme Court has held that a trial court's limiting instruction that the jury may only consider out-of-court statements for corroborative and not substantive evidence can cure potentially erroneous admission of inconsistent statements. *State v. Evans*, 346 N.C. 221, 232-33, 485 S.E.2d 271, 277-78 (1997); *see also State v. Early*, 194 N.C. App. 594, 600-01, 670 S.E.2d 594, 600 (2009) (holding that the trial court did not abuse its discretion when the trial court gave limiting instructions on a prior inconsistent statement because the statement was only admitted for corroborative purposes).

Here, defendant argues that the trial court erred by admitting video of the forensic interview with Jessica because during the forensic interview Jessica described crimes she did not testify to at trial, such as statutory rape. Thus, he argues that because the prior out-of-court statements go "far beyond" Jessica's trial testimony, the video interview did not add weight or credibility to the testimony, and the evidence of other crimes alluded to in the interview had a "dangerous tendency" to prejudice the jury. *State v. McClain*, 240 N.C. 171, 177, 81 S.E.2d 364, 368 (1954).

Although we agree that Jessica's statements in the forensic

interview did go beyond her testimony at trial, we find that any error in admitting the video was cured by the trial court's limiting instruction. Here, the trial court gave limiting instructions on prior consistent statements and corroboration on its own initiative when it admitted the forensic video and gave a similar instruction in its jury charge. Specifically, the trial court included the following in its jury charge:

> Evidence has also been received tending to show that at an earlier time a witness made a statement which may conflict or be consistent with the testimony of the witness at this trial. As I've previously instructed you, ladies and gentlemen, you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. If you believe the earlier statement was made, and that it conflicts or is consistent with the testimony of the witness at this trial, you may consider this, and all other facts and circumstances bearing upon the witness's truthfulness, in deciding whether you will believe or disbelieve the witness's testimony.

Furthermore, although there were parts of the video that did go beyond Jessica's testimony, there was also a great deal of consistency sufficient for the jury to be able to assess Jessica's credibility. Thus, the trial court did not err by admitting the forensic video for corroborative purposes and instructing the jury as to the only permissible use of this

evidence. *See Early*, 194 N.C. App. at 601, 670 S.E.2d at 600. Because there was no error, there could not have been plain error. *See State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986) (holding that without error at all, there cannot be plain error). Defendant's argument is overruled.

## II. Expert Testimony

Next, defendant argues that the trial court committed plain error by allowing improper opinion testimony by an expert witness, Ms. McClure, that Jessica had "definitely been sexually abused." Defendant also argues that Ms. McClure's testimony that she treated Jessica for issues that victims face after suffering sexual abuse was an improperly admitted opinion. We disagree.

Because defendant did not object to the admission of this testimony at trial, we review this issue on appeal for plain error. *See Lawrence,* 365 N.C. at 518, 723 S.E.2d at 334.

In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has in fact occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987); *State v. Grover*,

142 N.C. App. 411, 543 S.E.2d 179, *aff'd per curiam*, 354 N.C. 354, 553 S.E.2d 679 (2001). "However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002). Admission of expert testimony that the victim has been sexually abused without proper foundation constitutes plain error. *State v. Delsanto*, 172 N.C. App. 42, 47-48, 615 S.E.2d 870, 873-74 (2005).

There are two statements at issue here. The first is Ms. Reynolds's testimony that Ms. McClure told her that Jessica had "definitely been sexually abused."

Defendant argues that this was an improper expert opinion about Jessica's credibility because it was based on Ms. McClure's discussion with Jessica and not on physical evidence of abuse. *See Stancil*, 355 N.C. at 267, 559 S.E.2d at 789. We disagree. After reviewing the transcript, we find that Ms. McClure never expressed an opinion about Jessica's credibility or whether she had been sexually abused. Rather, the statement defendant argues amounts to an impermissible opinion was in fact included in Ms. Reynolds's testimony. In context, Ms. Reynolds

was merely relating the fact that Ms. McClure told her that Jessica had disclosed that she had been sexually abused. Ms. Reynolds's testimony was as follows:

> Q. And what happened next?
>
> A. Towards the end, she said that she had definitely been sexually abused.
>
> Q. When you say she, do you –
>
> A. I'm sorry; [Ms. McClure] brought me into the office and said that *Jessica had told had told [sic.] her that she was -- that-- that her daddy had engaged in oral sex* and that she felt like we needed to proceed, that I had -- that I was compelled-- I don't know what the word would be, to call Child Protective Services, that if I didn't call that she had to call.

Ms. McClure never testified that she stated to Ms. Reynolds or anyone else that Jessica had been sexually abused. Further, Ms. McClure neither formulated nor conveyed any opinion that Jessica had been sexually abused. When the State tried to elicit an actual opinion from Ms. McClure, the trial court sustained defendant's objection. Thus, because Ms. McClure never gave an expert opinion on Jessica's credibility or whether she had been sexually abused, defendant's argument is overruled.

The second statement at issue is Ms. McClure's testimony that in subsequent therapy sessions with Jessica, Ms. McClure treated her for issues from which sexual abuse victims might

suffer.

Defendant relies on *State v. Hall*, 330 N.C. 808, 822-23, 412 S.E.2d 883, 891 (1992), where the North Carolina Supreme Court granted a new trial to the defendant because the trial court improperly admitted expert testimony that the alleged victim of sexual abuse was diagnosed as having post-traumatic stress disorder and a conversion reaction as substantive evidence of guilt. The case at hand is distinguishable because Ms. McClure's testimony about working with Jessica on issues that sexual abuse victims may face was not an opinion that the victim had, in fact, been abused. Ms. McClure testified that she never probed into the details of what occurred with Jessica and defendant after Jessica's initial disclosure that she watched pornographic videos with defendant. Rather, she proceeded with treatment designed for children who have *alleged* sexual abuse. Thus, contrary to the expert witnesses in *Hall*, Ms. McClure never formed an opinion as to whether abuse had in fact occurred, and thus, the trial court did not err by admitting her testimony.

Since defendant failed to establish that the trial court erred by admitting these statements, we conclude that there cannot be plain error. *See Torain*, 316 N.C. at 116, 340 S.E.2d

at 468.

### III.  Motion to Dismiss

Defendant also argues that the trial court erred when it denied defendant's motion to dismiss the charges for taking indecent liberties with a minor.  Defendant claims that the State did not produce substantial evidence that defendant rubbed Jessica's vagina or engaged in analingus – the two factual theories upon which the jury convicted defendant for these charges.  We agree.

The first matter we must address is whether defendant waived this issue on appeal.  The State argues that defendant waived review of this issue because he presented a different argument at trial supporting the motion to dismiss than the argument he now presents on appeal.  It is well-settled in North Carolina that where a theory argued on appeal was not raised before the trial court, "the law does not permit parties to swap horses between courts in order to get a better mount." *State v. Augustine*, 359 N.C. 709, 721, 616 S.E.2d 515, 525 (2005) (citations omitted).  At trial, defendant's motion to dismiss was based upon lack of evidence for the rape and incest charges. As to the indecent liberties charges, defense counsel objected only on the basis that the indictments were vague.  At the close

of all evidence, defense counsel reinstated his motion to dismiss all charges but did not specifically assert that the motion was tied to lack of evidence for the indecent liberties charges.

We hold that defendant did not preserve this issue on appeal because he did not state the specific grounds for the motion to dismiss which he now argues on appeal. See N.C. R. App. P. 10(a)(1) (2013); *Augustine*, 359 N.C. at 721, 616 S.E.2d at 525. However, defendant requests that we invoke Rule 2 of the North Carolina Rules of Appellate Procedure to reach the merits of this issue. *See* N.C. R. App. P. 2 (2013). This Court has previously utilized Rule 2 to reach the merits of issues concerning sufficiency of the evidence and motions to dismiss where theories used to support the motions at the trial level differed from those raised on appeal. *See State v. Martinez*, ___ N.C. App. ___, ___, 749 S.E.2d 512, 514 (2013) (invoking Rule 2 to review the merits of denial of a motion to dismiss on appeal despite defendant relying on a different argument for dismissal at trial). Thus, in accordance with caselaw and to prevent manifest injustice, we invoke Rule 2 to reach the merits of defendant's argument here.

The trial court's ruling on a motion to dismiss is reviewed

*de novo* on appeal. *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007). Under the *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for the lower court's. *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999). When a trial court rules on a motion to dismiss, it must determine whether the State presented substantial evidence of each essential element of that offense. *State v. Davis*, 74 N.C. App. 208, 212, 328 S.E.2d 11, 14 (1985). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *State v. Barden*, 356 N.C. 316, 351, 572 S.E.2d 108, 131 (2002). The trial court must consider the evidence in the light most favorable to the State and give the State any reasonable inference that can be drawn therefrom. *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983).

A person is guilty of taking indecent liberties with a minor, if

> [B]eing 16 years of age or more and at least 5 years older than the child in question, he either: (1) willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purposes of arousing or gratifying sexual desire; or (2) willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any

> child of either sex under the age of 16
> years.

N.C. Gen. Stat. § 14-202.1 (2013).

This case is comparable to *State v. Mueller*, 184 N.C. App. 553, 647 S.E.2d 440 (2007). In *Mueller*, the defendant was indicted for thirty-three felonies and three misdemeanors based on alleged sexual misconduct with his biological daughter and his stepdaughter. *Id.* at 556, 647 S.E.2d at 444. Five of the indictments were for the crime of taking indecent liberties with a minor; to support one of these charges, the jury was instructed, and the verdict sheet listed, the specific act of the defendant asking the alleged victim to perform oral sex on him. *Id.* at 557, n.1, 647 S.E.2d at 445. The jury found him guilty for one count of taking indecent liberties with a minor based on this factual theory. *Id.* On appeal, defendant argued that the trial court erred by denying his motion to dismiss this charge because the State did not produce substantial evidence that the defendant in fact asked the alleged victim to perform oral sex. *Id.* at 560, 647 S.E.2d at 446. The Court agreed; even though the victim testified "at length" as to acts supporting other charges, such as defendant placing his penis between the victim's thighs and ejaculating on her, the State failed to produce substantial evidence that he asked her to

perform oral sex. *Id.* at 561, 563, 647 S.E.2d at 447-48. Because the trial court specified this act in its instruction and the jury identified this fact as supporting the conviction in its verdict sheet, the State was required to produce substantial evidence of this act to survive a motion to dismiss. *Id.* Thus, because it failed to do so, this Court reversed the conviction and dismissed the charge.

Here, like in *Mueller*, the trial court specified facts supporting the charges of taking indecent liberties with a minor in its jury instructions, and those facts were included on the verdict sheets. Thus, pursuant to *Mueller*, in order to overcome defendant's motion to dismiss, the State was required to produce substantial evidence of the two factual theories upon which the charges of taking indecent liberties with a minor were premised – that defendant rubbed Jessica's vagina and performed analingus.

First, the State argues that it produced substantial evidence that defendant performed analingus on Jessica. We disagree. Analingus is defined as "the stimulation of the anal opening by the tongue or lips." *State v. White*, 101 N.C. App. 593, 606, 401 S.E.2d 106, 113 (1991). Jessica testified that defendant "put[] his mouth on [her] butt" and "kissed" her

"butt." The State argues that, viewing the evidence in the light most favorable to the State, this testimony constituted substantial evidence that defendant performed analingus and was corroborated by the video interview wherein Jessica told Ms. Horner that defendant "started kissing [her privates] even inside" and "then he did my butt." However, the forensic interview was admitted only to corroborate Jessica's in-court testimony and was not to be considered as substantive evidence. Without more, we cannot conclude that Jessica's testimony that defendant "kissed" her "butt" amounted to substantial evidence that "a reasonable mind might accept as adequate to support [the] conclusion" that defendant stimulated Jessica's anal opening with his tongue or lips. Thus, we vacate defendant's conviction for taking indecent liberties with a minor premised on analingus. *See State v. Hunt*, __ N.C. App. __, __, 728 S.E.2d 409, 415 (2012) (vacating a conviction for crime against nature where evidence was insufficient to withstand the defendant's motion to dismiss).

Next, the State argues that it produced substantial evidence that defendant rubbed Jessica's vagina. Again, we disagree. Jessica testified that defendant kissed and rubbed her butt, put his mouth on her private part and butt, made

Jessica rub his penis, and put his penis in her mouth. The only evidence supporting the theory that defendant rubbed Jessica's vagina is in the forensic video, where Jessica said that defendant rubbed her vagina with his finger and rubbed his testicles on her "private." Because the video was admitted for corroborative and not substantive purposes, and because no substantive evidence was admitted tending to show that defendant rubbed Jessica's vagina, we hold that the State failed to produce substantial evidence to support this theory. Thus, we vacate defendant's conviction for taking indecent liberties with a minor premised on rubbing Jessica's vagina. *See Hunt*, __ N.C. App. at __, 728 S.E.2d at 415.

Although it is clear that the State produced substantial evidence of acts that would support a conviction of taking indecent liberties with a minor generally, we are constrained by *Mueller* to analyze defendant's motion to dismiss in light of the specific instructions provided by the trial court and the facts specified in the verdict sheets. Because the State failed to produce substantial evidence of those facts, we must vacate defendant's convictions for these charges. Further, because these convictions were consolidated with two counts of statutory sex offense for sentencing, we remand this matter to the trial

court for resentencing. *See State v. Wortham*, 318 N.C. 669, 674, 351 S.E.2d 294, 297 (1987) (remanding for resentencing where one or more but not all convictions consolidated for judgment had been vacated on appeal).

## IV. Jury Instructions

Defendant's final argument is that the trial court committed plain error when it instructed the jurors that they could convict defendant of taking indecent liberties with a minor based on the theories that defendant rubbed Jessica's vagina and performed analingus because they were not supported by the evidence. Because we vacate the two convictions for taking indecent liberties with a minor, we need not address this issue on appeal.

## Conclusion

We hold that the trial court did not err by admitting video footage of the forensic interview into evidence because it was admitted only for corroborative purposes and the trial court gave a proper limiting instruction. Furthermore, the trial court did not err by admitting Ms. McClure's or Ms. Reynolds's testimony because neither statements rose to the level of improper expert opinion. Finally, we vacate the convictions for two counts of taking indecent liberties with a minor because the

State failed to produce substantial evidence of the facts supporting those charges, and we remand for resentencing.

     NO ERROR IN PART; VACATED AND REMANDED IN PART.

     Judges GEER and McCULLOUGH concur.

     Report per Rule 30(e).